# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-21505-CIV-GARBER

LOURDES EUGENIA MENENDEZ,
    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
    Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on the parties' Consent to Magistrate Jurisdiction. (DE 20.)  Pursuant to such consent, the Court has received and reviewed plaintiff Lourdes Eugenia Menendez's Motion for Summary Judgment (DE 24); and the defendant Carolyn W. Colvin, Acting Commissioner of Social Security's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (DE 25 & 26). No other responses or replies were received. The general issues before this Court are whether the record contains substantial evidence to support the denial of benefits to the plaintiff and whether the proper legal standards were applied.  Upon a review of the filings and the record in this case and upon due consideration, the undersigned respectfully RECOMMENDS that the administrative decision below be AFFIRMED for the reasons set forth below.

## I.    Brief Statement of Facts and Procedural History[1]

Pursuant to 42 U.S.C. § 405(g), Menendez seeks judicial review of the final administrative decision of the Commissioner of Social Security denying her claims for supplemental security

---

[1] The record upon which the ALJ based his findings is voluminous. Very little of this record, however, pertains to the issues raised by the parties on appeal. Regarding the medical record in this case, Menendez raises primarily issues pertaining only to: the discrepancy between the vocational expert's findings and the Department of Labor's *Dictionary of Occupational Titles*; and whether the hypothetical posed by the ALJ to the vocational expert sufficiently accounted for all of the restrictions in the claimant's residual functional capacity. Thus although the record has been carefully reviewed in its entirety, the Court finds no need to rehash herein all of the intricacies of Menendez's medical history except where necessitated by the parties' arguments. The ALJ's determinations regarding the remainder of the record is not otherwise in dispute. All citations to the record in this case will correspond to the marked pages of the administrative transcript ("R."), entered on the Court's docket at DE 16 with its accompanying attachments.

income and disability insurance benefits. In denying Menendez's claims, the administrative law judge considering her application applied the sequential evaluation process used in evaluating such claims. 20 C.F.R. §§ 404.1520, 416.920. This process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) has one or more severe impairments, as defined in the regulations; (3) has one or more impairments that meet or medically equal the requirements of an impairment listed in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1, (the "Listings"); (4) can return to her past relevant work; and (5) if not, whether she can perform other work. *Id.*

Since the claimant was found to be not working at step one of the analysis, the ALJ here proceeded to the second step and found that Menendez had the severe impairment of "recurrent major depressive disorder without psychosis." (R. at 20.)

At step three, the ALJ determined that none of Menendez's impairments, or any combination thereof, met or medically equaled the severity of any of the Listings, specifically considering 12.04, "Affective Disorders." (R. at 21.) Proceeding through the evaluation, the ALJ next considered the evidence presented and assessed Menendez's residual function capacity, finding her able "to perform a full range of work at all exertional levels but with [certain] nonexertional limitations." (R. at 23.) These impairments resulted in the ALJ finding that Menendez was limited to understanding, remembering, and carrying out only simple, routine tasks. (*Id.*) The ALJ also found that although Menendez had the capacity to appropriately interact with supervisors, her contact with coworkers and the general public should be limited to only occasional interactions. (*Id.*) The ALJ further noted that Menendez had the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place. (*Id.*)

Continuing on to step four, the ALJ found, based on testimony from a vocational expert,

that Menendez was capable of performing her past relevant work as both a laundry worker and kitchen helper. (R. at 26.) The vocational expert testified that a hypothetical individual with similar educational achievements, vocational experiences, and age as Menendez, and capable of performing as indicated in her residual functional capacity, would have the capacity to perform Menendez's past relevant work. (*Id*.) In comparing, then, Menendez's residual functional capacity with the physical and mental demands of her past relevant work, the ALJ found that Menendez would be able to perform both jobs as they are actually and generally performed. (*Id*.) The ALJ therefore determined that Menendez "has not been under a disability" as defined under the Act. (*Id*.) The Appeals Council's denial of Menendez's request for review rendered the ALJ's decision final. (R. at 1-3.) Menendez's timely filed suit for review of the administrative decision in this Court followed.

II.   **Standard of Review**

The ALJ's decision is reviewed to determine if it is supported by substantial evidence and based on proper legal standards. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (internal citations omitted). When supported by substantial evidence, the ALJ's findings are conclusive. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). In determining whether substantial evidence exists, a court must take into account evidence that is favorable as well as unfavorable to the decision. *Id.*

Although the ALJ's factual findings are limited to a deferential standard of review, no presumption of validity is applied to his legal conclusions, including a determination of the

appropriate legal standards to be applied in analyzing and deciding a claim for benefits. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Unless the error is deemed harmless, where either the law has not been correctly applied, or the court has not been furnished with sufficient reasoning for determining that the law has been correctly applied, reversal is mandated. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to a social security appeal).

The claimant bears the burden, through steps one through four of the analysis, of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing his past relevant work, if any. *Hale v. Bowen*, 831 F.2d 1007, 1001 (11th Cir. 1987). Once this has been established, the burden then shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Id.*

III.   **Discussion**

In seeking to have the ALJ's decision reversed and her application either granted or remanded for further consideration, Menendez contends that certain aspects of the ALJ's decision are either not based on substantial evidence or are the result of an improper application of the law. This is so, Menendez argues, in two general respects: (A) the level of reasoning ability required by her past relevant work, according to the *Dictionary of Occupational Titles*,[2] was incompatible with the ALJ's finding that she was limited to understanding, remembering, and carrying out only simple, routine tasks; and (B) the ALJ improperly disregarded the opinion of a state agency physician. For the following reasons, the Court finds that Menendez's contentions are without

---

[2](4th ed. rev. 1991).

4

merit and therefore AFFIRMS the administrative decision, denying Menendez's claims, in all respects.

> A. **<u>The reasoning level of Menendez's past relevant work was not incompatible with the ALJ's finding that the claimant could only perform simple, routine tasks.</u>**

> 1. **<u>Reasoning level two is compatible with simple, routine tasks.</u>**

In the sequential evaluation process, the burden of production and proof lies with the claimant through the fourth step of the process to show an inability to return to her past relevant work. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); 20 C.F.R. §§ 404.1520(g), 416.920(g). To determine whether Menendez could return to her past work, the ALJ sought testimony from a vocational expert. (R. 49-52.) In presenting the relevant hypothetical claimant to the vocational expert, the ALJ described "an individual of the same age, education and work experience as the claimant," with no physical limitations and who could "understand, remember and carry out simple routine tasks." (R. at 50.) The hypothetical at issue here further limited the claimant to only occasional interaction with coworkers and the general public but allowed unlimited interactions with supervisors and provided that the claimant could identify and avoid normal workplace hazards as well as adapt to routine changes. (R. at 50.) Based on the hypothetical, the vocational expert opined that Menendez would be able to perform her past relevant work.

The vocational expert characterized Menendez's past work as: laundry worker II, *DOT* section 361.685-010, 1991 WL 672985, and kitchen helper, *DOT* section 318.687-010, 1991 WL 672755. Menendez claims that there is a conflict between the descriptions of both of these jobs, as set forth in the *DOT*, and the ALJ's assessment that she is limited to performing only simple tasks.

(R. at 50; Pl.'s Mot. for Summ. J., 7-8.) Specifically, she argues, there is a conflict because the job descriptions require having a General Education Development[3] reasoning level of two. This level, in turn, is defined in the *DOT* as being able to: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions"; and "[d]eal with problems involving a few concrete variables in or from standardized situations." *DOT*, App'x C, 1991 WL 688702. Menendez insists that this definition is plainly at odds with her limitation to only simple tasks. The Commissioner, of course, is just as convinced of the contrary. Courts opining on the issue appear similarly conflicted, though the majority appear to fall on the Commissioner's side.[4]

Though there are no decisions that are binding on this Court, the vast majority of the opinions reviewed by the Court come down on the side of the Commissioner. *E.g., Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660 (11th Cir. 2007) (unpublished) (no remand where VE identified even reasoning level three jobs for a plaintiff who could do only simple, routine, and repetitive work); *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009) (even level three reasoning not inconsistent with plaintiff's ability to perform only simple work); *Renfrew v. Astrue*, 496 F.3d 918 (8th Cir. 2007) (reasoning level three not inconsistent with plaintiff's inability to do complex work)*; Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005) (stating that "level two reasoning appears more consistent with [p]laintiff's RFC" of "simple and routine work tasks"); *Lara v. Astrue*, 305 F. App'x 324 (9th Cir. 2008) (unpublished) (plaintiff who is able to perform simple

[3]The GED component of each job description in the *DOT* "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. *DOT*, App'x C, 1991 WL 688702. This is education of a general nature which does not have a recognized, fairly specific occupational objective." Such education may be obtained from elementary school, high school, or college or from experience and self-study. *Id*. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id*. The scale ranges from a low of one to a high of six. *Id*.

[4]Not that one would know this from reading the parties' submissions. Of the perhaps dozens of cases easily searchable in various databases opining on the issue, the Commissioner cited only one and the claimant none.

6

repetitive tasks capable of doing work at reasoning level two); *Money v. Barnhart*, 91 F. App'x 210 (3d Cir. 2004) (unpublished) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive."*); Hurtado v. Astrue*, No. 09-60930-CIV, 2010 WL 1850261, at *11 (S.D. Fla. April 14, 2010) ("Most courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks."); *Marley v. Comm'r of Soc. Sec.,* No. 8:13-cv-2384-T-CM, 2015 WL 847376, at *4 (M.D. Fla. Feb. 26, 2015) (affirming where ALJ found that even a reasoning level of three is not necessarily in conflict with the plaintiff's limitation to simple work); *Gray v. Colvin*, No. 3:12cv506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014) (finding that "even if Plaintiff has the mental RFC to perform only 'simple, routine tasks' and retains the ability to understand, remember, and carry out only very short and simple instructions, these capacities are consistent with a reasoning level of two or three, not a reasoning level of one . . . ."); *Short v. Astrue*, No. 3:11-cv-713-N-BN, 2013 WL 655020, at *10 (N.D. Tex. Feb. 5, 2013) (agreeing that jobs with a reasoning development level two are consistent with limitations to simple instructions and routine tasks); *Davis v. Astrue*, No. SAG-11-2279, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013) (finding reasoning level two consistent with a restriction to simple, routine tasks); *Anderson v. Astrue*, Case No. 2:11-00046. 2011 WL 3843683 at *4-5 (S.D. Ala. Aug. 30, 2011) (noting that "several other courts have concluded that jobs with a reasoning level of two are consistent with simple, unskilled work")*;Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984-85 (C.D. Cal. 2005) (holding that DOT's level two reasoning requirement did not conflict with the ALJ's finding that plaintiff could perform work involving simple, routine tasks*); Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) (stating that "the DOT's level two reasoning requirement did not conflict

with the ALJ's prescribed limitation" to "simple, routine, concrete, tangible tasks").

A job's reasoning level gauges the minimal ability a worker needs to complete a job's tasks herself. Going up the numerical reasoning development scale used by the DOT, from "one" to "six," the level of detail involved in performing the job increases while the job task becomes less routine. A job with a reasoning level of only one, for example, requires that the worker be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables." *DOT*, App'x C, 1991 WL 688702. A job with a reasoning level of three, on the other hand, would require a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables." *Id*. The jobs identified by the vocational expert here, both requiring a reasoning level of two, fall right in the middle of these.

A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving few concrete variables." *Id*. Menendez submits that, categorically, "[b]y definition and as a matter of law, if an individual is limited to 'simple work,' that individual is incapable of performing level '2' or higher work." (Pl.'s Mot. for Summ. J., DE 24, 8.) As support for her position, she provides only a citation to the *DOT* generally, focusing on the *DOT*'s use of the word "detailed." In so focusing, however, Menendez overlooks the word "uninvolved" that qualifies the term "detailed." Presumably, by describing the detailed instructions as "uninvolved," the complexity of those instructions was meant to be downplayed. As one court has explained, "Although the *DOT* definition state[s] that the job required the understanding to carry out detailed instructions, it

specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning. *See, e.g.*, *Flaherty*, 182 F. Supp. 2d at 850.

Although neither party cited to their decisions, the Court notes that at least a handful of courts have indicated conflict with the notion that a claimant limited to "simple" tasks might be capable of performing jobs identified in the *DOT* as requiring higher than a reasoning level of one. *E.g.*, *Hall v. Astrue*, No. 2:09-cv-113-FtM-DNF, 2010 WL 5071003, *8 (M.D. Fla. Dec. 7, 2010) (finding that jobs that required a reasoning level two are incompatible with a claimant's restriction to "simple, one-step tasks"); *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1303 (M.D. Fla. 2006) (finding an inconsistency between a job requiring reasoning level three and a limitation to simple interactions and tasks); *Mead v. Barnhart*, No. Civ. 04-139-JD, 2004 WL 2580744, at *2 (D.N.H. Nov. 15, 2004) (finding that a GED reasoning level of two or higher assumes that a plaintiff is able to perform more than simple or repetitive tasks); *Hall v. Barnhart*, No. 03-299-P-C., 2004 WL 1896969, at *2 (D.C. Me. Aug. 25, 2004) (finding a job requiring a GED reasoning level of two to be "seemingly [] inconsistent with a limitation to repetitive work entailing simple instructions"). The Court does not find the reasoning supplied by any of these cases persuasive and further notes meaningful distinctions between those cases and the one now before the Court. *Hall*, 2010 WL 5071003 (distinguishable because the claimant there, unlike the claimant here, was specifically restricted to only one-step tasks); *Estrada*, 417 F. Supp. 2d 1299 (distinguishable because the jobs proposed by the vocational expert there were classified as reasoning level three, not two as here); *Mead*, 2004 WL 2580744 (distinguishable because the job at issue there required GED reasoning at level three and the vocational expert opined that the job required only "simple, repetitive tasks"); *Hall*, 2004 WL 1896969 (distinguishable because the ALJ there provided the vocational expert

with an incomplete hypothetical). Further, the Commissioner's assertion, and reliance on *Hurtado*

for the proposition, that a reasoning level of two is not incompatible with a limitation to simple and

routine tasks was left completed unrebutted by the claimant. 425 F. App'x 793.

   2.  **Social Security Ruling 00-4p would not mandate reversal in any event.**

  Even if the Court were to be persuaded by the claimant that there is indeed a general

incompatibility between a reasoning level of two and a limitation to simple tasks, Menendez's

reliance on SSR 00-4p would be nonetheless unwarranted. SSR 00-4p requires only that an ALJ

resolve "apparent unresolved conflict." In an unpublished decision, the Eleventh Circuit found no

apparent inconsistency between a vocational expert's opinion and the *DOT* because "the ALJ asked

the vocational expert if there were any inconsistencies between his opinion and the *DOT*, and the

vocational expert responded that there were not" and the claimant "did not offer any evidence

controverting the vocational expert's opinion, nor did she object to the opinion." *Leigh v. Comm'r

of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (unpublished). Here, as in *Leigh*, the ALJ

asked the vocational expert during the hearing, "[D]o you understand that if you give us an opinion

that conflicts with the information in the Dictionary of Occupational Titles that you need to advise

us of that conflict and provide us with the basis for your opinion?" (R. at 49.) To this the

vocational expert answered, "Yes your honor," and Menendez's counsel never objected or

challenged the opinion nor did he even cross-examine the expert. (*Id*.) Thus, as in *Leigh*, there was

no apparent conflict for the ALJ to resolve.

  Since no apparent conflict was raised at the hearing between the expert's testimony and the

*DOT*, the ALJ was not required to address SSR 00-4p. *See Gibson v. Astrue*, No. 1:09-CV-677-

AJB, 2010 WL 3655857, at *15 (N.D. Ga. Sep. 13, 2010). An ALJ is not under an obligation to

independently corroborate a vocational expert's testimony and therefore can rely on such testimony where there is no apparent conflict with the *DOT*. *See id.* (internal quotations omitted). Further, the Eleventh Circuit has held that a vocational expert's testimony "trumps" any inconsistent provision of the *DOT*. *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1994); *see Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 at n. 4 (11th Cir. 2011) (unpublished) ("Social Security Rulings are not binding on this court. To the extent SSR 00-4p conflicts with *Jones [v. Apfel]*, we are bound by *Jones*.") (internal citations omitted). Thus, the Court finds no error in the ALJ's reliance on the vocational expert's testimony, even if the claimant could establish an actual inconsistency between the testimony and the *DOT*.

B.  **The ALJ properly considered the testimony of a state agency psychologist.**

Contrary to Menendez's assertion, the ALJ's residual functional capacity assessment and hypothetical posed to the vocational expert were consistent with the evaluations of state agency psychologists which the ALJ afforded significant weight. (R. 26 (referring to, among others, exhibit 7F; R. at 327-30).) Menendez complains that the ALJ, on the one hand, claimed to afford "significant weight" to the opinion evidence provided by the state agency psychological consultants while, on the other, disregarding relevant portions of at least one consultant's evaluation. In particular she points to a checkbox on a standardized form completed by one of the state agency psychologists. That checkbox noted that Menendez was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 328.) Menendez argues that it was error for the ALJ not to mention this limitation in her residual functional capacity assessment or to properly account for it in the relevant

11

hypothetical posed to the vocational expert.

The Court finds, however, that the claimant has misapprehended the interplay between the checkbox portion of the form, which is not an opinion on a claimant's residual functional capacity, and the actual functional capacity assessment as formulated in the narrative section of the state agency psychologist's assessment. As explained in an unpublished decision by the Eleventh Circuit, the Social Security Administration's Programs Operations Manual System (POMS) clarifies that the boxes checked by state agency providers are only part of a worksheet and that such checkboxes do not constitute the doctors' actual RFC assessment. *Land v. Comm'r of Soc. Sec.*, 494 Fed. App'x 47, 49 (11th Cir. 2012) (citing and quoting SSA POMS DI § 24510.060(B)(2)). The administration's POMS specifically provides that the checkbox portion of the form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment." POMS DI § 24510.060(B)(2)(a). "Checking the box 'Moderately Limited" means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation." *Land*, 494 Fed. App'x at 49. The actual residual functional capacity opinion is found below the checkbox section, in the narrative section at the end of the form where the consultant is required to elaborate on the findings in the prior sections. *Id*.

Here, in the narrative part of the form, section III, with the heading "FUNCTIONAL CAPACITY ASSESSMENT," the psychologist consultant explained that, with respect to the section containing the checkbox at issue, the claimant had limited concentration, persistence, and pace, "but is able to do simple non-production tasks." (R. at 329.) Overall, the consultant concluded that Menendez was "[n]ot substantially limited due to psychiatric factors per

12

preponderance of information" and was "[c]apable of basic work activities." (*Id.*) The ALJ's residual functional capacity assessment and corresponding hypothetical question to the vocational expert accordingly accounted for these findings: the claimant was limited to understanding, remembering, and carrying out only simple, routine tasks. (R. at 23, 50.) The ALJ expressly noted in her decision that, based on the evidence and considering her subjective complaints, Menendez suffered from moderate limitations in concentration, persistence, and pace. (R. at 26.)  The ALJ further noted that the evidence as a whole indicated that Menendez could at least understand, remember, and carry out simple, routine tasks. (*Id.*) Contrary to the claimants contention, then, substantial evidence support the ALJ's finding that she could return to her past relevant work.

IV.    **Conclusion**

Upon careful consideration, the Court finds that there is substantial evidence in the record as a whole to support the administrative decision below and that said decision otherwise comports with all relevant legal standards. The Court therefore

ORDERS that the administrative decision is AFFIRMED.

Accordingly, it is also ORDERED that Menendez's Motion for Summary Judgment (DE 24) be DENIED and that the Commissioner's Motion for Summary Judgment (DE 25) be GRANTED.

DONE and ORDERED in Chambers at Miami, Florida, this 23rd day of March 2015.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE